**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANCIS BARDO,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 4:17-942** |
| **v.** | : | **(JUDGE MANNION)** |
| **NORFOLK SOUTHERN** | : | |
| **RAILWAY COMPANY,** | | |
| | : | |
| **Defendant** | | |
| | : | |

**MEMORANDUM**

Pending before the court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1, M.D. Pa. (Doc. 14). For the reasons stated below, the court will **GRANT** the motion.

**I.  PROCEDURAL HISTORY**

Plaintiff commenced this litigation by filing a complaint on May 30, 2017. (Doc. 1). Upon completion of discovery, defendant filed a motion for summary judgment and brief in support on January 11, 2019. (Doc. 14, Doc. 15). On April 8, 2019, plaintiff sought leave to file a response to defendant's motion for summary judgment *nunc pro tunc*. (Doc. 16). On the same day, plaintiff filed a brief in opposition to defendant's motion for summary judgment. (Doc. 17). Attached to plaintiff's brief in opposition was the report

of Dr. Eckardt Johanning who plaintiff argued ought to be admitted to testify as an expert in the case.

This court granted plaintiff's motion to file a response to defendant's motion for summary judgment *nunc pro tunc* and reopened discovery with respect to the report of Dr. Johanning only. (Doc. 20). Under the order, defendant was permitted to file a reply brief to their motion for summary judgment and plaintiff was permitted to file a sur-reply. On February 14, 2020, defendant filed a reply brief to their motion for summary judgment objecting to the report of Dr. Johanning and again arguing that plaintiff has failed to provide admissible expert testimony and has failed to prove the necessary element of causation. (Doc. 25). Plaintiff has not filed a sur-reply and the time to do so has expired. Defendant's motion for summary judgment is now ripe for disposition.

## II.   FACTUAL BACKGROUND

Plaintiff's complaint is brought under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§51-60. Plaintiff seeks compensation for defendant's negligence and failure to provide a safe work environment which he alleges led to the "aggravation of existing conditions and cumulative micro

traumas disorders/repetitive stress injuries to his spine, neck, muscles and nerves." (Doc. 1, p. 3).

In support of his claim, plaintiff offers the report of Dr. Eckardt Johanning and contends that he ought to be qualified to testify as an expert in this case. Defendant states in its supplemental statement of material facts that "Dr. Johanning is a board-certified occupational medical doctor, who has testified on behalf of numerous FELA plaintiffs over the years, with a focus on testifying and offering opinions in cases involving allegations of whole body vibration exposure in the locomotive cab setting, and the vast majority of his published research focuses on purported vibration exposure in a locomotive cab setting." (Doc. 26, p. 1-2). Defendant deposed Dr. Johanning on January 15, 2020. (Doc. 26, p. 2). Defendant objects to the admissibility of Dr. Johanning's testimony on the following grounds: (1) he is not qualified to testify as an expert in the case; (2) his opinions are not the result of reliable principles or methods; and (3) he has not applied reliable principles and methods to the facts of the case. (Doc. 26). Defendant's argument continues that because Dr. Johanning is not qualified to testify as an expert in this case, plaintiff has failed to present admissible expert evidence that speaks to medical causation and thus has failed to prove that defendant's negligence caused plaintiff's injuries, a required element of a FELA claim.

### III.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex Corp.*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*,139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## IV.   DISCUSSION

Defendant raises two arguments in their motion for summary judgment and they renew one of those arguments in their reply brief.[1] Defendant's main argument in their motion for summary judgment and reply brief is that plaintiff has not produced admissible expert evidence that defendant's negligence caused his alleged injuries and because of this has failed to plead a required element for a cognizable FELA claim. However, plaintiff contends that Dr. Johanning ought to be permitted to testify as an expert in this case and can speak to medical causation. Defendant objects to the admissibility of Dr. Johanning's testimony and presents this argument in its reply brief. Plaintiff has not responded to defendant's reply brief or supplemental statement of material facts and, pursuant to Local Rule 56.1, all facts in defendant's supplemental statement of material facts are deemed uncontested and admitted.

---

[1] Defendant argues that it is not responsible for workplace exposures or negligence that occurred prior to plaintiff's employment with defendant which commenced on June 1, 1999. Plaintiff does not contest this argument and consents to granting summary judgment in favor of defendant with respect to this argument.

### a. Plaintiff has Failed to Produce Admissible Expert Testimony and as a Result has Failed to Prove the Element of Causation Required for a Cognizable Claim Under FELA.

FELA states that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." 45 U.S.C. §51. FELA is not a strict liability statute; "it is a negligence statute with an explicitly-stated relaxed standard of causation." *Monheim v. Union R. Co.*, 996 F.Supp.2d 354, 361 (W.D.Pa. 2014); see *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542-543 (1994).

To present a *prima facie* case under FELA, the employee-plaintiff must show that: (1) he was injured within the scope of his employment; (2) his employment was in furtherance of the railroad's interstate transportation business; (3) the railroad was negligent; and (4) that negligence played some part in causing the injury for which he seeks compensation. *Monheim*, 996 F.Supp.2d at 361; see also *Van Gorder v. Grand Trunk W.R.R.*, 509 F.3d 265, 269 (6th Cir. 2007). At the summary judgment stage, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the

injury or death for which damages are sought." *Monheim,* F.Supp.2d at 361 (citing *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011)).

The Third Circuit has clarified that to defeat a motion for summary judgment a plaintiff need only present a minimum amount of evidence. *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 268 (3d Cir. 1991) (citing *Pehowic v. Erie Lackawanna R.R.*, 430 F.2d 697, 699-700 (3d Cir. 1970)). Further, "[a] trial court is justified in withdrawing ... issue[s] from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee." *Pehowic*, 430 F.2d at 699-700. Although the causation standard is lessened under FELA, a plaintiff "must nevertheless demonstrate the common law elements of negligence: i.e., duty, breach, foreseeability, and causation." *Monheim*, 996 F.Supp.2d at 361; see *Illinois Cent. R. Co. v. Skaggs*, 240 U.S. 66 (1916).

The standard of causation under FELA and the admissibility of expert testimony are separate issues. *Wicker v. Consolidated Rail Corp.*, 371 F.Supp.2d 702, 713 (W.D.Pa. 2005); see *In re Paoli Railroad Yard PCB Litigation*, 2000 WL 274262, *2 (E.D.Pa. 2000); see also *Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994). This means that the standard for

the admissibility of expert testimony is unaffected by FELA's explicitly stated lower causation standard. *Id.*

In considering defendant's motion in this case, this court finds the Ninth Circuit's approach in *Claar* illustrative of the correct way to analyze the argument that a plaintiff has failed to present admissible expert testimony and thus has failed to prove the necessary element of causation. In *Claar*, the Ninth Circuit affirmed the district court's finding that plaintiff's expert affidavits were inadmissible because they failed to explain the expert's reasoning and methods. 29 F.3d at 501-502. Without the expert's affidavits, plaintiffs could not demonstrate a causal connection between defendant's negligence and plaintiffs' injuries and summary judgment was properly granted in favor of the defendants. *Id.* at 504-505. *Claar* is directly analogous to defendant's argument in this case and this court will follow *Claar's* methodology and analyze Dr. Johanning's report under the typical standard of admissibility for expert testimony.

The standard of admissibility for expert testimony is governed by the Federal Rules of Evidence, specifically Rule 702, and the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education

> may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other
> specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in
> issue; (b) the testimony is based on sufficient facts or
> data; (c) the testimony is the product of reliable
> principles and methods; and (d) the expert has
> reliably applied the principles and methods to the
> facts of the case.

*Fed.R.Evid. 702.* The Third Circuit has interpreted Rule 702, as analyzed in

*Daubert* and its progeny, to include "three distinct substantive restrictions on

the admission of expert testimony: qualifications, reliability and fit." *Burke v.*

*TransAm Trucking, Inc.*, 617 F.Supp.2d 327, 330-331 (M.D.Pa. 2009) (citing

*United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001)). The proponent

of the expert "bears the burden of establishing the reliability and admissibility

of the expert's testimony by a preponderance of the evidence." *Burke*, 617

F.Supp.2d at 331. Rule 702 has a liberal policy favoring admissibility. *Pineda*

*v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

## 1. Qualifications

In order for a witness to be qualified as an expert, "he must first be

qualified by virtue of specialized expertise." *Elcock v. Kmart Corp.*, 233 F.3d

734, 741 (3d Cir. 2000); see also *In re Paoli R.R. Yard PCB Litigation*, 35

F.3d 717, 741 (3d. Cir. 1994). The standard to be qualified as an expert was articulated by the Third Circuit as follows:

> Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony. The basis of this specialized knowledge "can be practical experience as well as academic training and credentials." We have interpreted the specialized knowledge requirement liberally, and have stated that this policy of liberal admissibility of expert testimony "extends to the substantive as well as the formal qualification of experts." However, "at a minimum, a proffered expert witness ... must possess skill or knowledge greater than the average layman...."

*Elcock*, 233 F.3d at 741 (citing *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (citations omitted)).

Defendant does not object to Dr. Johanning's education, training and professional experience. They concede that Dr. Johanning is a board-certified occupational medical doctor and that his education and training speak for itself. Dr. Johanning's education, training, and experience certainly show that he possesses skill greater than the average layman. Given Dr. Johanning's education, training and experience, and Rule 702's liberal interpretation of the specialized knowledge requirement, this court finds that Dr. Johanning satisfies the qualifications threshold of Rule 702.

## 2. Reliability

The reliability threshold in Rule 702 "requires expert testimony to be 'based on the methods and procedure of science, not on subjective belief and unsupported speculation.'" *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-834 (3d. Cir. February 11, 2020) (citing *Karlo v. Pittsburg Glass Works, LLC* 849 F.3d 61, 80-81 (3d Cir. 2017) (quoting *In re TMI Litigation* 193 F.3d 613, 703-704 (3d. Cir. 1999)). "Courts look for rigor, not mere 'haphazard, intuitive inquiry.'" *Id.* (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d. Cir. 2000)). The court is required to determine whether the expert's testimony is supported by "good grounds." *Karlo, 849* F.3d at 81.

Both the Supreme Court in *Daubert* and the Third Circuit have explained that many factors ought to be considered when determining whether an expert's testimony is based on "good grounds." *Id.* These factors include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the

> relationship of the technique to methods which have
> been established to be reliable; (7) the qualifications
> of the expert witness testifying based on the
> methodology; and (8) the non-judicial uses to which
> the method has been put.

*UGI Sunbury LLC*, 949 F.3d at 834 (citing *Pineda* F.3d at 247-248 (citing *Paoli,* 35 F.3d at 742 n. 8). No one factor is dispositive, but the court is required to analyze these factors to some extent. *UGI Sunbury LLC*, 949 F.3d at 834.

Dr. Johanning is a board-certified occupational medical doctor. There is no question regarding Dr. Johanning's education and training; however, there is a question regarding the data that Dr. Johanning cites in his report. In Dr. Johanning's report he states that "[a]s a maintenance of way trackman and machine operator, [plaintiff] was typically exposed to the well-recognized risk factors for occupational neck and back disorders and injuries." (Doc. 17, Attachment 4, p. 7). These well-recognized risk factors include whole-body vibrations and jolts during plaintiff's work duties, prolonged sitting, awkward body posture, and forceful repetitive tasks. (Doc. 17, Attachment 4, p. 7). Dr. Johanning concludes that it is his professional opinion that plaintiff's "injuries were more likely than not caused in whole or in part by excessive occupational mechanical loading, such as whole-body vibration of the spine combined with other well recognized ergonomic stressors cited." (Doc. 17,

Attachment 4, p. 8). Dr. Johanning states that he "considered the results of past numerous inspections and vibration/shock measurements of a variety of US locomotives and maintenance of way equipment during routine operations documented in scientific articles and provided in detail to the railroad corporations." (Doc. 17, Attachment 4, pp. 7-8).

Defendant convincingly points to several weaknesses in Dr. Johanning's proposed testimony. As the proponent of Dr. Johanning's testimony, plaintiff has the burden of "establishing the reliability and admissibility of the expert's testimony by a preponderance of the evidence." *Burke,* 617 F.Supp.2d at 331. Plaintiff has failed to do so. Simply supplying the report of Dr. Johanning is not enough for plaintiff to meet his burden. Plaintiff has failed to respond to any of defendant's arguments and, upon review, the court determines that Dr. Johanning's conclusions are not based on "good grounds."

In defendant's supplemental statement of material facts, they highlight that maintenance of way workers do the distinct job of installing, repairing, and maintaining railroad tracks and rail bed - meaning they work on the railroad track itself, as compared to train and engine workers, such as engineers and conductors, who ride on trains and operate locomotives. Dr. Johanning's reference list contains sixty-four references and, of these

references, less than five are focused specifically on maintenance of way workers. Of these articles, none of them focused on injuries of neck specifically. In his deposition, Dr. Johanning admitted that he is not aware of any scientific studies that conclude that vibration and shock exposure from maintenance of way equipment causes degenerative neck conditions on maintenance of way workers. Dr. Johanning also concedes that he based his conclusion on discussions with plaintiff, observations, and experience. While Dr. Johanning makes mention of observations, he concedes that he did not observe any equipment owned by defendant. (Doc. 26, p. 6).

Dr. Johanning attached two articles to his report, *Whole-Body Vibration-Related Disorders in Occupational Medicine—An International Comparison* and *Vibration and Shock Exposure of Maintenance-of-Way Vehicles in the Railroad Industry*. Neither of these articles support Dr. Johanning's conclusion that the well-recognized risk factors and maintenance of way equipment caused or contributed to plaintiff's degenerative neck conditions because neither focuses specifically on neck positions or injuries of the neck.

It is possible that Dr. Johanning's hypothesis - that these well-recognized risk factors and maintenance of way equipment may cause degenerative neck conditions in maintenance of way workers - is testable,

but he has not tested such a hypothesis. Again, he admitted that he is not aware of any scientific study that concluded that vibration and shock exposure from maintenance of way equipment causes degenerative neck conditions in operators. In addition, Dr. Johanning notes that some of his conclusions are based on conversations with plaintiff, which are subjective, not scientific. It is impossible that Dr. Johanning's hypothesis is subject to peer review because no study with such a hypothesis has been conducted. The other factors established by *Daubert* and its progeny are inapplicable because of Dr. Johanning's failure to point to any scientific study that supports his specific conclusion. Dr. Johanning's proposed testimony is based on speculation and jumps in logic that are unsupported by any scientific study. As a result, the court concludes that Dr. Johanning's proposed testimony does not meet the reliability threshold.

### 3. Fit

In determining whether an expert's testimony "fits" the proceeding, the court asks whether "it will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 835 (citing Fed.R.Evid. 702(a)). "Fit is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Daubert*, 509 U.S. at 591.

"[E]ven if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge for purposes of the case." *Id.* (citing *Paoli*, 35 F.3d at 743).

As mentioned above, Dr. Johanning's proposed testimony does not meet the threshold of reliability because his conclusion is not based on good grounds. This court also concludes that Dr. Johanning's proposed testimony does not meet the fit threshold because, even though he may be able to speak about injuries caused by whole body vibrations, he cannot speak specifically the injuries alleged by plaintiff or their causes.

Reiterating a point made in the above section, Dr. Johanning does not identify any scientific study that focuses on degenerative neck conditions in maintenance of way workers. Dr. Johanning testified at his deposition that he did not quantify plaintiff's exposure to awkward body postures of the neck. (Doc. 26, p. 5). He also testified that there are standard measurements that can be taken, but he did not do any of these measurements with plaintiff. (Doc. 26, p. 5). Further, Dr. Johanning acknowledged that in previous cases he typically performed a study of whole body vibration occupational exposure - which included taking into account background information about the history of vibration research and his own prior involvement in locomotive studies - but, he did not perform such a study in this case. (Doc. 26, p. 6).

Further, Dr. Johanning did not conduct any examination of equipment owned by defendant or that plaintiff used during his employment. (Doc. 26, p.6). Specifically, in his report Dr. Johanning took into account that the Mark III Tamper that plaintiff used while employed by defendant did not have a vibration damping seat without ever seeing the Tamper. (Doc. 26, p. 5-6). Dr. Johanning took information from discussions with plaintiff without conducting any observations, tests, or measurements to support plaintiff's claims. While Dr. Johanning may have general scientific knowledge about injuries sustained by maintenance of way workers and their causes, he has not applied this general knowledge to the facts of this case and accordingly his proposed testimony does not "fit" this case.

Again, as the proponent of Dr. Johanning's testimony, plaintiff has the burden "of establishing the reliability and admissibility of the expert's testimony by a preponderance of the evidence." *Burke* 617 F.Supp.2d at 331. Plaintiff has not met this burden and this court concludes that Dr. Johanning's proposed testimony is inadmissible. Because plaintiff has failed to produce admissible expert testimony that can speak to medical causation, he has failed to prove the necessary element of causation for a cognizable FELA claim. Plaintiff's failure to prove causation, a necessary element, renders all

other facts immaterial and Rule 56 mandates the entry of summary judgment in favor of the defendant.

## V.    CONCLUSION

For the reasons stated above, defendant's motion for summary judgment will be **GRANTED**. An appropriate order shall follow.


*s/ Malachy E. Mannion*

**MALACHY E. MANNION    United States District Judge**

**DATE: May 11, 2020**
17-942-01